First case up is the United States v. Focia. Mr. Hahn. May it please the court. Mr. Ross, the instruction on count one in this case disregarded the language of the statute and Congress's deliberate choice as recognized by this court to limit criminal liability under the firearm, through the Firearm Owners Protection Act in 1986, thereby permitting a jury to convict Mr. Focia of conduct that was not covered under the express language of the statute. When combined, the three preserved instructional errors in this case expanded liability beyond what was permitted under the plain language of the statute in violation of both the rule of lenity and the most basic canon of statutory construction, that is, that were to give effect to every word and every phrase used by Congress in a statute. Because they broadened a contested element of the offense, instructional errors in this case cannot be harmless beyond a reasonable doubt. I thought the district court gave our 11th Circuit patterned jury instruction. Is our patterned jury instruction wrong? Yes, Your Honor. It is? It is, Your Honor. In what way? It broadens the scope of the statute. It excludes the or for a hobby exception language that Congress deliberately included. It includes the language that says that a person who supplements his income is considered to be a dealer under the statute. And the objection was phrased in what way? It was taken as an exception, Your Honor, to the jury instructions as they were being read. No, I mean, what was the objection stated? Exactly. You can't just say exception. Right. Mr. Focia actually asked them to include the language or for a hobby. He also asked them to remove the language supplementing one's income. And he asked the court to remove the language even if it's not that person's primary business or job. All of those were given over his objection and his exception. So his his position then is that if you get 40 percent of your income from dealing in firearms, but 60 percent of it from something else, that's not covered. I'm not entirely sure what the percentages would be, Your Honor, in this case. Well, I mean, you said primary. Sure. He's asked for primary. Sure. I suppose that it could be read that way, Your Honor. In this case, however, Mr. Focia was shown to have on the trial. Evidence in the record was shown to have shipped two guns over the course of a period of approximately 14 months. Those two guns sold for approximately six thousand dollars. Well, I mean, there was also evidence about the 18 firearms to Australia. You can look at however you want, but of course, we have to look at it in the light most favorable to the government. And there was other evidence about guns that were recovered in his house during a search and evidence about, I guess, three missing guns that had appeared on the Web site that weren't in his house. So it seems I mean, it seems like there was more than evidence about just two guns. And your honor, with respect to the 18 guns that went to Australia or went internationally, that evidence was not presented at the trial itself that was presented at the sentencing. But with respect to the three guns that had been shown as having been listed on the dark Web website, your honor is correct. There were eight handguns recovered in his home. As our briefing points out, with respect to the sentencing issue on that, we would note that only one of those guns charitably could be seen as having been listed for sale. That still gives us approximately a dozen guns over the course of 14 months that were in the trial record in this case. And there's no indication that wasn't his primary income. Your honor, there's no indication as to what source of income he had of any kind. In this case, the record reflects that Mr. Fosha did not file income tax returns for the years 2010, 2012 and 2013. The trial occurred in 2014 or the investigation. Yeah. And the government's theory of evidence, I suppose, is, look, he didn't report any income. So there's no evidence he had any income. The evidence is he didn't have any other income. This is the income he had. By definition, anything is primary over nothing. And your honor, that is true that that may have been the government's theory. I would note, however, that with respect to the government's closing argument in this case, they did rely on the erroneous or what we assert is the erroneous instruction. And that is the government argued that Mr. Fosha was guilty of defense because a person is guilty of that offense. Quote, when it or when, quote, it's how you make a living or how you supplement your income. So the government obviously believed to some extent that they may not have satisfied the jury by presenting sufficient evidence that this was his primary source of income. For all we know, Mr. Fosha had a trust fund, various other things. Mr. Fosha was not required, in other words, to disprove his income status. And because the Congress has made a deliberate choice to state that this is supposed to be a person's livelihood. And as we point out, the primary objective is livelihood. We believe that that should result in a narrowing reading of the term livelihood, although it's not defined by statute. But under the rule of lenity, giving full effect to all the words in the statute, we would note that defining livelihood as something broader than Congress intended would violate the rule of lenity. By doing so, the jury instruction permitted a jury to convict Mr. Fosha, even if it believed that he was a part time gun salesman who supplemented his otherwise lawful or otherwise legal livelihood through the occasional sale of firearms on the Internet. And we would note that this error could not be held to be harmless, assuming this court finds error. Because unlike in Nieder, where one of the elements was not in dispute in Nieder, the tax, whether or not the false report on the tax return, whether the income was material or not, the false statement on the return was material. Was, as the Supreme Court noted, the evidence on that was, quote, so overwhelming, in fact, that Nieder did not argue to the jury and does not argue here that his false statements could be found immaterial. In this case, Mr. Fosha specifically argued to the jury that he, assuming that it believed he was the shipper of the two guns that were at issue in counts two and three, and by implication count one, that assuming that he was the shipper, that that was nothing more than an occasional sale permitted under the statute. Because of the instructional error, however, Mr. Fosha was not able to argue to the jury that this could be hobby sales, that he could be a hobbyist salesperson, much the way that a person might be a hobby stamp dealer or a hobby baseball card dealer or whatnot. Moving on to counts two and three, the sufficiency of the evidence with respect to transfer of a firearm to a resident of another state. It's not surprising that the evidence that Mr. Fosha was of Mr. Fosha's state of residence was inadequate. The government didn't appear to realize that this was an element that they were required to prove. At trial, in fact, in response to Mr. Fosha's motion for judgment of acquittal on the counts, the government argued, quote, to violate the statute, one simply has to ship a gun to an out-of-state resident. One does not necessarily have to be a resident of a state other than the recipient of the firearm. The government's evidence more than established that Mr. Fosha was in Alabama when he shipped the firearm to Nebraska. The government then adopted the same argument for purposes of the gun that was shipped to New Jersey. Now, in fairness, the government did at the end throw in a catch-all that said, otherwise, we believe the evidence was sufficient. But it is clear that in this case, the reason that the evidence is so insufficient is because the government did not understand what the elements of this offense were. Now, which count are you talking about now? Counts two and three, Your Honor. And in that case, under 18 U.S.C. 922.85, the government was required to prove three elements that Mr. Fosha transferred a firearm to another person. I don't think that that's in dispute. Well, he may dispute his identity, but a firearm was transferred. That when Mr. Fosha, neither Mr. Fosha nor the recipient was a federal firearms licensee. And that Mr. Fosha knew or had reasonable cause to believe that the recipient was not a resident of the same state as Mr. Fosha. In this case, the government presented insufficient evidence as to, on count two, the government presented insufficient evidence as to the license status of the recipient. Similar to the Fry's case, as well as that he was not a resident of the state. What about Agent Conway's testimony? It seems to me her testimony was more than sufficient to show that your client was a resident of Alabama during the time of these transactions. And, Your Honor, I'll summarize what Agent Conway's testimony and what the evidence here was. That Mr. Fosha was a resident of the state August 2013 and October 2014 when the two transfers occurred. During surveillance spanning those 14 months, Agent Conway saw Mr. Fosha near a residence, near a residence in Eclectic Alabama once. She was able to say it was either in May of 2014 or in October of 2014. That on October 31, 2014, searching the Eclectic residence near which she saw him, located three items with some variation in the name Michael Fosha. One was an expired driver's license. One was a receipt from the year 2010, which preceded these charges considerably. And a final was an E-Trade financial document bearing the name Michael A. Fosha and a Montgomery, Alabama address. I would note that the evidence in the record was that Mr. Fosha had a father by the name of Michael Fosha who had a Montgomery address at that time. The government provided no testimony that anyone found any of those typical items that you would find in your home. For example, a toothbrush, clothes that fit Mr. Fosha, any sort of voter registration card, any sort of magazine subscription in his name, a utility bill, a bill for an internet provider. As we know, Mr. Fosha was accused of selling guns through the internet. It seems remarkable to me that the government was unable to establish that there was an internet connection. I thought that was his mother's house. His mother's house, Your Honor, was in Montgomery, Alabama. The one in Eclectic was? The one in Eclectic was not his mother's house, Your Honor. There's no evidence in the record as to whether anyone who owns the Eclectic address, whether there was a lease on the Eclectic address. No property tax records, no testimony from a neighbor or a landlord that they'd seen Mr. Fosha. So his father's name is Michael Albert Fosha? His father's name is Michael Fosha. I would not feel comfortable, Your Honor, saying without having re-reviewed the record again that it was Michael Albert Fosha. But his name is Michael Albert Fosha? His name is Michael Albert Fosha. That was the name on the driver's license, the expired driver's license, right? Yes, Your Honor. Was there any testimony about whether the picture matched him? Your Honor, for purposes of this, we would not be disputing that Mr. Fosha is the person on that driver's license or that that was his expired driver's license. Which was an Alabama driver's license? Which was an Alabama driver's license, Your Honor. Why isn't that enough? Well, Your Honor, at the time, it has to do with whether at the time of the sale, Mr. Fosha was a resident of this state. And with respect to that driver's license, the testimony was that it was expired. Didn't one witness also testify that between 2005 and 2008, he actually worked with your client at a Montgomery business? Yes, Your Honor. Absolutely. Pretty strong circumstantial evidence he was living here at the time, is it not? That is very strong circumstantial evidence or direct evidence even that he was living here between the years 2005 and 2008. However, Your Honor, the evidence is that after 2010, Mr. Fosha sort of drops off the radar in terms of anything. And the government actually presented evidence that Mr. Fosha had no employment record with the state of Alabama. They contacted Industrial Relations to try to find out if he had in some ways to try to find out if he had viable income. And they learned that Mr. Fosha was not employed by an Alabama employer during the time of this. One more question about that. The Alabama driver's license that was expired expired on December 22, 2013, right? I will take Your Honor's word for that on that, Your Honor. Okay. Well, the sale occurred in August of 2013. So why isn't the license that was not expired at that time that reflected an Alabama residence for Mr. Fosha not sufficient to establish residency? Well, assuming Your Honor is correct, and I have no reason to doubt that, that would bear on count too, which would be the offense that occurred in August of 2013. We would note with respect to that, that there was some testimony that the license actually, Mr. Fosha, quote, canceled the license. I'm not sure exactly when he, quote, canceled the license. But I think this court's probably reviewed someone's record in seeing that Mr. Fosha at some point believed that he was no longer subject to the laws of the United States or the state of Alabama. But with respect to that, to that extent, we would note that with respect to count two, we have an alternative basis for the insufficiency of the evidence. And that has to do with the license status of the recipient of the firearm. But, Your Honor, to the extent that the record reflects that there's a valid driver's license for the date of one of the transactions, I don't believe that we could, that that would be, I believe that the evidence would at that point arguably be sufficient enough for a jury to find. With respect to, just closing out, with respect to the count two, the August 2013 transaction, the recipient of the firearm. Counsel, do you want to use up your rebuttal time or save it? I will, I will use it up, Your Honor. I will use it up. On the license, on the license, your argument's clear from the brief. Your Honor, I will, I'll take the court's advice here and I will reserve the remainder of my time. Thank you. Thank you. Mr. Ross. May it please the court, Jonathan Ross on behalf of the United States. What is the evidence that he was a resident as to the other count, count three? Your Honor, the evidence as to count three. What date, what date does count three remind me? Count three is October 27th of 2014. It's important to note that October 27th of 2014, Mr. Poster shipped the firearm to New Jersey. October 31st of 2014, four days later, the ATF agents and local law enforcement executed the search warrant at the Eclectic residence. When they did so, they found the paperwork that Mr. Hahn just discussed. I'll keep referring to it as eclectic. It's eclectic. My secretary can distinguish the difference, so. Your Honor, let me say the search warrant at the Boathouse Road address. I'll refer to it that way. That'll work. That sounds like eclectic, actually. So the documents were in the house just four days after Mr. Foster shipped that firearm. And talking about those documents first, Mr. Hahn made a point of bringing up Mr. Foster's father had a similar name. There was no evidence in the record as to Mr. Foster's father's name. The record site contained in the appellant's brief referred to questions that Mr. Foster asked of his mother in the course of representing himself. However, Mr. Foster's mother made no comment as to Mr. Foster's father's name. They were simply predicates to the questions that Mr. Foster asked. So there's no evidence as to Mr. Foster's name. The driver's license did come in as an exhibit. The driver's license clearly depicted Mr. Foster. And also the E-Trade financial paperwork had Mr. Foster's name on it. Mr. Foster's address. Now, the address on the paperwork was not the Boathouse Road address. It was the Seminole Drive address. However, that was a Montgomery address. And you also had the receipt from the pawn shop. Moreover, you had all of the inventory and the materials that Mr. Foster was using to conduct his gun business. All that was in the Boathouse Road address. You had the Glock boxes. You had the guns. You had the heat sealer. You had the metal sheeting that he was using to package these guns. All that was there just four days after he shipped the firearm to New Jersey. The close proximity in time is the strongest evidence of Mr. Foster's residence on Count 3. You also had, though, Special Agent Conway testified that she saw Mr. Foster at the Boathouse Road address. She had installed a GPS tracker on Mr. Foster's car during 2014. And that tracker had led her to Boathouse Road. There was ample evidence in that regard just as to Count 3. Viewing the evidence in the light most favorable to the government, a reasonable jury could easily conclude that as to Count 3, at least at the time he shipped that gun, Mr. Foster was not a resident of New York, and it was New York that Mr. Foster believed that the recipient of the gun, that was his state of residence. What about the non-federal firearms licensee requirement element as to Count 2? As to Count 2, the issue here is just a difference between present tense and past tense. The question that the government asked the witness at trial was, are you a federal firearms licensee? The witness said no. The government then asked, did you ever hold yourself out as being a federal firearms licensee? The government said no. Now, admittedly, the government did not ask in August of— Actually, what the government said is, did you ever, in the transaction you just discussed, hold yourself out? Yes, Your Honor. Not did you ever. Right. Yes, Your Honor. And stronger for the government. The government did not ask, you know, in August of 2013, did you have a federal firearms license? However, the jury could easily draw an inference from the testimony, you know, are you, and in this transaction, did you ever hold yourself out? The jury could draw an inference that that present tense also extended back to August of 2013. Moreover, the special agent had just testified that at that point he'd been with the ATF for 25 years. A reasonable jury could draw a conclusion that the special agent did not, in August of 2013, have a federal firearms license that he didn't have in 2015, and he didn't tell Mr. Posha about when he was engaged in this transaction. How long after the transaction was the trial? The trial occurred in June of 2015, and this transaction occurred in August of 2013, so less than two years later. Okay. And is there anything in the record about how long the license is, duration? There's nothing in the record, Your Honor, on that. I believe that it's a three-year license, but the record does not contain any information about the length of a federal firearms license. Whatever the length was, he could have been a licensee, and then the license expired, and he's not any longer an FFL, and he didn't represent during the transaction anything about his status. But you still don't have the fact that he was or was not, right? Your Honor, there is a set of circumstances wherein it's possible that the special agent didn't testify falsely and yet also had a federal firearms license when he engaged in this deal. However, given the standard of review here, viewing the evidence in the view most favorable to the government, a reasonable jury could draw an inference that special agent Kessler did not have a federal firearms license. And that issue wasn't raised in the motion for judgment of acquittal? Yes, Your Honor. No. The issue was not raised until it's raised for the first time on appeal. Is the 11th Circuit pattern jury instruction that was given on count one erroneous? Your Honor, the 11th Circuit pattern jury instruction was a correct statement of the law. There are sort of three issues within that jury instruction issue. Going to the first one, the inclusion of the supplementing one's income language. So there the statute defines being in the business of dealing firearms as engaged in repeated transactions involving firearms, the purpose of profit or livelihood. Statute does not define. I thought it said with the principal objective. Yes, Your Honor. Well, isn't that different? Yes, Your Honor. Okay. Principal objective. And then it defines the principal objective of livelihood and profit as meaning the intent underlying the sale is predominantly one of obtaining the livelihood and pecuniary gain as opposed to other intents. Livelihood and pecuniary gain. Yes, Your Honor. I believe 922A, 921A21 refers to profit, but the statute does not define livelihood, which is where the pattern jury instruction goes to. It goes to making one's income or supplementing one's income. It makes sense that a defendant shouldn't be shielded from criminal liability simply by having another job. Two defendants might sell the same number of guns in a year, make the same profit in a year, but one had a second job and the other one didn't have a second job, and it makes no sense that the one with the second job would go free, whereas the one who did nothing but sell guns without a federal firearms license would be subject to criminal liability. So it's a well-reasoned instruction on that point. So your argument really is that predominantly one of obtaining livelihood includes supplementing income. Yes, Your Honor. Yes, Your Honor. Let me tell you one part about this case that does bother me a little, and this goes to the sentencing. Yes, Your Honor. As I understand it from the record, we'll see that there were intercepted packages that were clearly traced back to the defendant in this case, but there were also a number of unintercepted packages, and it sort of seems to me that you just make an assumption that every one of those packages contained a gun when it seems to me there was really no evidence to show that, circumstantial or otherwise. So can you tell us what evidence there was to support that the defendant's offenses involved 32 firearms? Yes, Your Honor. Because to do that, you're going to have to show that some of these unintercepted packages contained a gun, don't you? Yes, Your Honor. And the district court made a fact finding that each unintercepted package contained at least one firearm, and that fact finding was not clearly erroneous. So there were three packages intercepted in Australia containing guns. Two of those packages were intercepted during the fall of 2013. Now, that's the same time that Mr. Focia shipped the gun to Nebraska. He was actively selling guns on the Internet at that point. Both of those packages had a return address of Computer Doctor 478 Opelika Road in Auburn. So the undercover agents went over to 478 Opelika Road in Auburn. I'm sorry, not undercover. They were just agents went over to 478 Opelika Road in Auburn, and there's no Computer Doctor business. The owner of the business said, yeah, way back when there was some, or the owner of that building said way back when there was a business called Computer Doctor here, but it wasn't open in 2013. So the agents talked to the guy who would run Computer Doctor way back in 2013, and that person said, I've never heard of, we didn't ship any guns. We didn't ship anything. Folks just dropped their computers off. I fixed them, and then they came back and picked them up. So we didn't ship anything in the mail internationally at all, much less ship guns. If he had been shipping ammunition, would that have been covered by the statute? No, Your Honor. I believe the guideline refers simply to guns. How do we know he didn't ship ammunition instead of firearms in those boxes? Well, Your Honor, none of the packages that Mr. Fosha shipped that were intercepted, those being the two guns shipped domestically to undercovers and the three shipped abroad, none of them contained just ammunition. So the inference you think the jury, I'm sorry, the judge could properly draw is that whatever was in the packages that were intercepted was in the packages that weren't intercepted. Yes, Your Honor. Yes, Your Honor. All of the packages intercepted contained at least one firearm. So you had this strange address that didn't match up with the actual business. Firearms that were intercepted were traced back to Mr. Fosha. So the district court drew the inference that Mr. Fosha was using this contrived address to ship packages and that, as Chief Judge Carnes just said, that the packages that weren't intercepted contained the same things as the packages that were intercepted. Let's assume hypothetically the district court was wrong. Yes, Your Honor. In considering whatever was in the unintercepted packages. As I understand it, the district court here sentenced the defendant at the very bottom end of the guideline range. Yes, Your Honor. Would it have made any difference in his sentence? Your Honor, if the district court was wrong, two levels would go off. So he was at a level 26, it would go down to a level 24, and the bottom end of the guidelines would have become the top end of the guidelines. It still would have been within a guideline sentence. Moreover, the district court offered as an alternative sentence that it would have imposed the same sentence regardless of any guidelines there. The fallback argument is it would be harmless. It would be harmless. Yes, Your Honor. So do we even need to address this? I mean... No, Your Honor. This court could affirm simply on the alternative sentence offered at the end of the sentencing hearing. Well, what we would have to do, though, to affirm on that ground, and I encourage and have encouraged district courts to say whether it makes a difference, but we have to look and see then if the variance upward would have been substantively reasonable. Yes, Your Honor. To find, or for this court to hold that the sentence... Was harmless. Was clearly, well, to hold that the district court erred and... The whole theory is that it wouldn't have made any difference that the district court could have erred upward and said he would have had these enhancements not applied. That works only if the upward variance would have been reasonable. Yes, Your Honor. Had that happened. Well, it wouldn't be an upward variance to simply take two levels off. That would still be a within-guidelines sentence. It would be a top-of-the-guidelines sentence as opposed to a bottom, but 51 months would have still... I'm talking about all three sentencing issues. Your Honor, there still would have been ample evidence for this to have been a substantively reasonable... But it wouldn't have been within the guideline range. It would have been a variance upward. I'm sorry. If the defendant is correct as to all three sentencing issues, you're saying he wouldn't have been. I'm saying even if he was correct as to all three issues, then we get to harmlessness because Judge Kahlon said it wouldn't make any difference. I would sentence him to the same thing. That's outside the guideline range if you take all three of his arguments as correct. Then the question would be, was this resulting sentence substantively reasonable? Because it would have required a variance. Actually, we're supposed to pass on substantive reasonableness in a harmless-error context even if it would not have required a variance upward. It doesn't mean much because we've never found within the guidelines range sentence unreasonable. But here it would have been. If all three arguments were accepted and we found three errors, the judge still said, I would have sentenced him to the same sentence anyway, all three. And then what we would have to do is say, okay, now the question is, taking Mattie's word, would the upward variance have been a substantively reasonable sentence in that situation? And it would have been, Your Honor. If you reverse on all three of the issues that the defendant raised, then Mr. Focia would not receive an enhancement for obstruction of justice. However, the district court could still consider Mr. Focia's conduct during the course of this litigation as a basis for the upward variance. I don't see how he wins on the obstruction of justice one. I was just trying to lay out the framework. Yes, Your Honor. And all of Mr. Focia's conduct would be grounds for an upward variance and would make this a substantively reasonable sentence. Moreover, the conduct that Mr. Focia engaged in before he was arrested in this case, there was the conduct that Mr. Focia engaged in on January 5th of 2015. The jury acquitted him on the use of the signal jamming device, but the fact remains that he led sheriff's deputies on a low-speed chase, refused to stop his vehicle. The jury saw a videotape, a trial, where he looked like he was going to run over one of the deputies once he had stopped. Mr. Focia generally engaged in a pattern of doing all that he could to flout any legal authority that existed. And that came in through the means of international handgun sales that was refusing to stop the law enforcement. We've got Mr. Ross. Let's hear from Mr. Hahn now. Ms. Tran, let me ask you this. Yes, sir. Suppose we find that the only error in the sentencing errors that you allege, the only one was in the enumeration of the number of guns. Would you agree with counsel that that wouldn't change the actual range of the sentence? It would just change top and bottom? I'm sorry. Would you agree that the sentence was within the resulting range? If only two levels were taken off, Your Honor, based on that, then yes, that would be the top end of the guidelines range. And Judge Dilan said that sentencing did the same thing without any of the three enhancements, didn't he? He said with regard to the objections, the sentence would be the same. And, Your Honor, you asked about the length of time of a federal firearms license. In our opening brief, we noted that an FFL lasts three years. And that's 18 U.S. Code 923A3B. There was nothing, though, in the record before the jury about that, was there? No, Your Honor. There was also nothing in the record regarding that this person was a licensed federal firearms licensee. But we would note that I believe this court can certainly take judicial notice of a statute. And I wanted to point out to the court that these licenses don't last forever. And, frankly, this license, this is similar to Frye's. I would also note that in Frye's, the testifying agent was an ATF agent. And that didn't seem to make a difference to this court that there is no prohibition that we've been able to identify. And certainly my friend over here has not identified any prohibition on an ATF agent having an FFL and moonlighting as a licensed firearms dealer. With respect to livelihood, I would note that limiting livelihood made sense to the United States Sentencing Commission. And we cited in our briefing. And that's in a case where livelihood is not accompanied by principal objective of. We would note that there they talk about multiplying by 2,000 hours and determining that any other income the person has is not the guideline. And so page 25 of my brief, the guideline, it's comment number 2 to 4B13. Engaged in a livelihood means that, quote, any defendant derived income from the pattern of criminal conduct that in any 12-month period exceeded 2,000 times the then existing hourly minimum wage under federal law. And, B, the totality of circumstances shows that such criminal conduct was the defendant's primary occupation. Now, where is that? Your Honor, that's United States Sentencing Guideline Manual 4B1.3. I'm using it as evidence of how this court could interpret livelihood and why this court should interpret livelihood narrowly. And that is where it's undefined and we need to look at other sources and other possible sources. I think probably one of the best sources would be the sentencing guidelines. They are not exactly charitable to defendants in all cases. But at the same time, the Sentencing Commission, while it has the authority to adopt guidelines relating to sentencing, hasn't been given the authority yet to interpret the substantive statutes. It has not, Your Honor. But I would note that in terms of looking at statutes, we do have federal judges on the Guidelines Commission. We've got, again, the principal objective of, seems to be a limited... Therefore. Their whys and their pronouncements, Your Honor, are due some substantial deference. We let the majority of six judges or seven, whatever it is, decide the correct interpretation of the statute, even if they don't know they're interpreting the statute. Yes, Your Honor, we would hope for that to be the case. Unless this court has any further questions, we would just ask for the relief granted in the briefing. Okay. Thank you. Thank you. Well argued on both sides. We appreciate that. Next case up is Landeros v. Pinnacle.